# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)

## I. (a)  PLAINTIFFS

**DEFENDANTS**

**(b)**  County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II.  BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                     and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT (Place an "X" in One Box Only)

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN (Place an "X" in One Box Only)

☐ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
(specify)

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

☐   CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:    ☐ Yes    ☐No

## VIII.  RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD

_Eric B. Meyer_

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 9018 Tradd Street, Boca Raton, FL

Address of Defendant: 101 Lindenwood Drive, Malvern, PA

Place of Accident, Incident or Transaction: 101 Lindenwood Drive, Malvern, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐ No☒

Does this case involve multidistrict litigation possibilities?  Yes☐ No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes☐ No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes☐ No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?  Yes☐ No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Eric B. Meyer, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 10/5/17  _____ Attorney-at-Law  87969 Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/5/17  _____ Attorney-at-Law  87969 Attorney I.D.#

CIV. 609 (5/2012)

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 9018 Tradd Street, Boca Raton, FL

Address of Defendant: 101 Lindenwood Drive, Malvern, PA

Place of Accident, Incident or Transaction: 101 Lindenwood Drive, Malvern, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☒

Does this case involve multidistrict litigation possibilities?  Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Eric B. Meyer, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 10/5/17 _____  _____  87969
                          Attorney-at-Law        Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/5/17 _____  _____  87969
                          Attorney-at-Law        Attorney I.D.#

CIV. 609 (5/2012)

IN THE UNITED STATES DISTRICT COURT      **APPENDIX C**
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| HEATHER DUFFY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| BRAVOSOLUTION US, INC. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)    Habeas Corpus -- Cases brought under 28 U.S.C. §2241 through §2255.      ( )

(b)    Social Security -- Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.      ( )

(c)    Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2.      ( )

(d)    Asbestos -- Cases involving claims for personal injury or property damage from exposure to asbestos.      ( )

(e)    Special Management -- Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)      ( )

(f)    Standard Management -- Cases that do not fall into any one of the other tracks.      (☒)

10/5/17
**Date**

_Eric B. Meyer_
**Attorney-at-law**

_____
**Attorney for** Plaintiff

(Civ. 660) 7/95

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HEATHER DUFFY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 2:17- |
| | : | |
| BRAVOSOLUTION US, INC., | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

After several years working for Defendant BravoSolution US, Inc. – five great years replete with strong performance reviews and generous compensation – things went bad all of a sudden for Plaintiff Heather Duffy in 2016.

Ms. Duffy's 2016 misfortune began with a painful divorce, which took its toll on Ms. Duffy emotionally. Although BravoSolution knew about Ms. Duffy's related stress and depression and how it adversely affected her, the company stood by with idle hands. It never offered her leave, an accommodation – nothing.

Perhaps, BravoSolution did not understand its legal obligations. Indeed, when a similar issue arose in July 2016, BravoSolution faltered again. That is when Ms. Duffy told Human Resources at BravoSolution that she would need to relocate to Florida to care for a parent with dementia, and would need two weeks to care for her parent. But, again, the company failed to offer Ms. Duffy job-protected leave. Instead, Ms. Duffy worked during a portion of her relocation after which the company allowed Ms. Duffy to use her vacation time to care for her parent. To boot, BravoSolution required Ms. Duffy to work while she was "on vacation" caring for her sick mom.

As BravoSolution continued to bungle Ms. Duffy's leave-related issues, other dominoes began to fall. Most notably, BravoSolution blurred the lines between personal and professional when it unreasonably feared that Ms. Duffy's caregiver responsibilities and overall toll on her emotional health would impede her from satisfying job requirements. Consequently, BravoSolution unfairly transitioned job responsibilities and sales opportunities away from Ms. Duffy. These irrational concerns harmed Ms. Duffy by decreasing her earning capacity.

The final blow came in November 2016, when BravoSolution terminated Ms. Duffy's employment about two weeks after Ms. Duffy returned to work from caring for her mom. In the termination letter, BravoSolution did not explain its actions to Ms. Duffy. Instead, BravoSolution communicated to Ms. Duffy that she had been laid off as part of a purported company "reorganization." At that time, Ms. Duffy was one of ten Directors, eight of whom were male, none of whom either had a disability or had recently taken time off to care for a parent with a disability or serious health condition. For sure, Ms. Duffy had outperformed some of the other Directors. But, she was the only one that BravoSolution laid off.

Based on the foregoing, Ms. Duffy, through her counsel, Dilworth Paxson LLP, now initiates this action against BravoSolution for violations of the Americans with Disabilities Act 42 U.S.C. §§ 12101, *et seq.* (the "ADA"), the Family and Medical Leave Act 29 U.S.C. §§ 22601, *et seq.* (the "FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and avers as follows:

2

## JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

2.      Additionally, this Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are citizens of different states.

3.      This Court may properly maintain personal jurisdiction over BravoSolution because it is incorporated in the Commonwealth of Pennsylvania, headquartered in Pennsylvania, and because its contacts with the Commonwealth of Pennsylvania and this judicial district are sufficient for the exercise of jurisdiction over BravoSolution to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because BravoSolution is incorporated in the Commonwealth of Pennsylvania, headquartered in Pennsylvania, and because substantially all of the acts giving rise to the claims set forth herein occurred in this judicial district, and BravoSolution is deemed to reside where it is subject to personal jurisdiction, rendering BravoSolution a resident of the Eastern District of Pennsylvania.

5.      Ms. Duffy is proceeding herein under Title VII and the ADA and has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the

3

Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.[1]

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Ms. Duffy is an adult female residing at 9018 Tradd Street, Boca Raton, FL 33434.

8. BravoSolution is headquartered at 101 Lindenwood Drive, Malvern, PA 19355 and develops strategic procurement platforms for companies and purchasing professionals worldwide.

9. At all times relevant herein, BravoSolution acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for BravoSolution.

10. BravoSolution is an "employer" within the meaning of the FMLA, ADA, and Title VII because BravoSolution employed at least 50 employees for at least 20 calendar weeks during 2015 and/or 2016.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[1] See Exhibit A, a true and correct copy of a "right-to-sue" letter the EEOC issued. Ms. Duffy dual-filed with the Pennsylvania Human Relations Commission ("PHRC"). Following the one-year anniversary of filing with the PHRC, Ms. Duffy will seek to amend her Complaint to include claims under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963.

12.     Ms. Duffy worked for BravoSolution from July 2011 until November 2016.

13.     Although BravoSolution and Ms. Duffy agreed that Ms. Duffy could work remotely, she was based out of BravoSolution's Malvern headquarters.

14.     In 2016, Ms. Duffy served as a Director of BravoSolution.

15.     During 2016, Ms. Duffy was one of ten Directors at BravoSolution.

16.     All ten BravoSolution Directors:

    a.   shared the same supervisor;

    b.   shared similar tasks and job responsibilities; and

    c.   were subject to the same standards.

17.     Eight of the ten Directors were male.

18.     BravoSolution compensates Directors with a combination of salary and sales commission.

## Ms. Duffy openly suffers from stress and depression at work and further notifies BravoSolution that she must care for a parent with dementia.

19.     In July 2016, Ms. Duffy informed BravoSolution's Human Resources Department that she would need to relocate to Florida to care for a parent with dementia, and would need two weeks to care for her parent in October 2016.

20.     Because of her dementia, Ms. Duffy's mother has trouble thinking, learning, remembering, and socializing, among other things.

21.     Ms. Duffy's mother's dementia requires her to have continuing treatment with a health care provider.

22.     In 2016, Ms. Duffy was also going through a painful divorce.

5

23.    Between the divorce and her mother's declining health, Ms. Duffy exhibited signs of stress and depression.

24.    Specifically, Ms. Duffy was sad, irritable, and fatigued for more than six months.

25.    Among other things, Ms. Duffy also had trouble concentrating at work.

26.    Upon information and belief, BravoSolution knew about Ms. Duffy's painful divorce.

27.    Upon information and belief, BravoSolution observed Ms. Duffy exhibiting the foregoing signs of stress and depression.

28.    For example, Ms. Duffy communicated to her indirect supervisor, Dan Warn, that she was going through a painful divorce and was suffering emotionally.

29.    Multiple times, Ms. Duffy cried on the phone to Mr. Warn while discussing both her divorce and her mother's illness.

30.    During this time period, Ms. Duffy regularly treated with a physician for her stress and depression and was prescribed medication for these conditions.

31.    As of October 2016, Ms. Duffy had never taken FMLA leave.

32.    As of each day of 2016, Ms. Duffy had worked at least 1,250 hours in the preceding 12 months.

33.    Throughout 2016, 50 or more employees, including Ms. Duffy, worked within 75 miles of BravoSolution's Malvern headquarters.

34.    BravoSolution never offered provided Ms. Duffy FMLA leave to care for either her mother or herself.

35.    BravoSolution never provided Ms. Duffy with any FMLA paperwork (e.g., Form WH-381 Notice of Eligibility and Rights & Responsibilities) in connection with her request for

6

leave to care for her mother, or any leave to which she may have been entitled for her own stress and depression.

### When caring for her mother, Ms. Duffy uses vacation days. BravoSolution also asks Ms. Duffy to work.

36.     From on or around October 3, 2016 to October 14, 2016 (returning to work on October 17, 2016), Ms. Duffy took time off from work to care for her mother (the "FMLA Leave").

37.     During the FMLA Leave:

    a.  Multiple supervisors, including Ms. Duffy's direct supervisor, knew that she was taking time off from work to care for her mother.

    b.  BravoSolution treated Ms. Duffy's time off from work to care for her mother as a vacation, rather than FMLA-protected leave from work.

    c.  Knowing that Ms. Duffy was taking time off from work to care for her sick mother, Ms. Duffy's indirect supervisor, Mr. Warn, required her to work.

38.     BravoSolution never informed Ms. Duffy that she had the right to uninterrupted block leave from work to care for her mother (*i.e.*, Ms. Duffy did not have to work and care for her mother concurrently).

39.     BravoSolution never informed Ms. Duffy that she could extend her leave from work to care for her mother.

### BravoSolution deprives Ms. Duffy of sales opportunities and then terminates her employment.

40.     Ms. Duffy never had disciplinary issues at BravoSolution.

41.     Ms. Duffy consistently received strong performance reviews from BravoSolution.

7

42.     In August 2016, Ms. Duffy received an annual performance review from BravoSolution with an overall score of "Exceeds Contribution."

43.     However, around this time, BravoSolution began to shift responsibilities and sales opportunities away from her to others.

44.     Upon information and belief, Ms. Duffy earned less in sales commissions because BravoSolution shifted Ms. Duffy's job responsibilities and sales opportunities to others.

45.     On or about November 2, 2016, BravoSolution terminated Ms. Duffy's employment.

46.     BravoSolution confirmed the termination of employment in a letter to Ms. Duffy.

47.     BravoSolution's termination letter did not state a reason for Ms. Duffy's termination.

48.     Instead, BravoSolution separately communicated to Ms. Duffy that she was laid off due to a company reorganization.

49.     Ms. Duffy was the only one of ten Directors that was laid off as part of BravoSolution's alleged company reorganization.

50.     Upon information and belief, Ms. Duffy's work performance was better than some of the remaining nine Directors.

## COUNT I - FMLA INTERFERENCE

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     BravoSolution is a covered employer under the FMLA.

53.     Ms. Duffy was eligible to take leave under the FMLA.

8

54.     Under the FMLA, an employee is entitled to leave to care for a parent with a serious health condition.

55.     Ms. Duffy's mother's dementia is an illness, injury, impairment, or physical or mental condition.

56.     Additionally, Ms. Duffy's mother's dementia satisfies one or more of the following criteria:

> a.  It involves periods of incapacity period or treatment connected with inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility.
>
> b.  It involves a period of incapacity requiring absence of more than three calendar days from work, school, or other regular daily activities that also involves continuing treatment by (or under the supervision of) a health care provider.
>
> c.  It involves a period of incapacity that is permanent or long-term, as treatment is often ineffective.
>
> d.  It is a condition for which an individual generally receives multiple treatments by, or on referral by, a health care provider that likely would result in incapacity of more than three consecutive days if left untreated.

57.     Ms. Duffy's mother had (and continues to have) a serious health condition.

58.     Additionally, an employee may take FMLA leave when that employee is unable to work because of her own serious health condition.

59.     Ms. Duffy's stress and depression related to her painful divorce qualifies as an illness, injury, impairment, or physical or mental condition.

60.     Additionally, because Ms. Duffy regularly treated with a physician for her stress and depression and was prescribed medication for these conditions, these conditions satisfy one or more of the foregoing criteria identified in paragraph 56 above.

61.     Ms. Duffy's stress and depression were serious health conditions.

9

62.     Ms. Duffy provided BravoSolution with enough information to establish that Ms. Duffy would require the use of FMLA leave to care for her mother because her mother had a serious health condition.

63.     Additionally, BravoSolution knew or should have known that Ms. Duffy may need FMLA leave to treat for her own serious health condition.

64.     However, BravoSolution never offered FMLA leave to Ms. Duffy or otherwise apprised her of her rights under the FMLA.

65.     Had BravoSolution advised Ms. Duffy of her right to take up to 12 weeks of FMLA leave after BravoSolution knew that Ms. Duffy needed FMLA leave to care for her mother, Ms. Duffy could have learned about her right to take additional job-protected FMLA leave to care for her mother.

66.     Because BravoSolution did not advise Ms. Duffy of her right to take up to 12 weeks of FMLA leave after BravoSolution knew that Ms. Duffy needed FMLA leave to care for her mother, Ms. Duffy was unable to take additional job-protected FMLA leave to care for her mother.

67.     It is reasonable likely that Ms. Duffy would have taken additional leave under the FMLA to care for her mother had Ms. Duffy known about her right to take up to 12 weeks of FMLA leave to care for her mother.

68.     Had BravoSolution advised Ms. Duffy of her right to take up to 12 weeks of FMLA leave after BravoSolution knew that Ms. Duffy needed FMLA leave for her own serious health condition, Ms. Duffy could have taken job-protected FMLA leave from work to treat for her own serious health condition.

10

69.     Because BravoSolution did not advise Ms. Duffy of her right to take up to 12 weeks of FMLA leave after BravoSolution knew that Ms. Duffy needed FMLA leave for her own serious health condition, Ms. Duffy was unable to take job-protected FMLA leave from work to treat for her own serious health condition.

70.     It is reasonable likely that Ms. Duffy would have taken job-protected FMLA leave from work to treat for her own serious health condition had she known about her right to do so.

71.     By failing to provide Ms. Duffy with notice of her rights under the FMLA, BravoSolution interfered with Ms. Duffy's ability to meaningfully exercise her right to FMLA leave and she suffered resulting prejudice.[2]

72.     Additionally, by requiring Ms. Duffy to work while on the FMLA Leave, BravoSolution interfered with Ms. Duffy's substantive rights under the FMLA, while discouraging her from using such leave.

## COUNT II  - FMLA RETALIATION

73.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

74.     The leave from work that Ms. Duffy sought to care for her mother is protected under the FMLA.

75.     BravoSolution otherwise knew or should have known that Ms. Duffy may need FMLA leave for her own serious health condition.

---

[2] See, *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004) *holding modified by Erdman v. Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009).

76.   When BravoSolution shifted Ms. Duffy's job responsibilities and sales opportunities to others, it knew or should have known that Ms. Duffy had requested FMLA-protected leave to care for her mother and may need FMLA leave for her own serious health condition.

77.   BravoSolution shifted Ms. Duffy's job responsibilities and sales opportunities to others because Ms. Duffy: (a) had requested FMLA-protected leave to care for her mother; (b) may need FMLA leave for her own serious health condition; or (c) both.

78.   Upon information and belief BravoSolution did not shift any job responsibilities or sales opportunities from any of the other Directors.

79.   When BravoSolution terminated Ms. Duffy's employment, it knew that she had needed, requested, and taken FMLA-protected leave.

80.   BravoSolution terminated Ms. Duffy's employment because: (a) she needed/requested FMLA-protected leave; (b) she took FMLA-protected leave; or (c) both.

81.   Indeed, BravoSolution's termination of Ms. Duffy's employment was so close in time to Ms. Duffy's use of FMLA-protected leave, that it demonstrates a causal connection between her use of leave and the adverse employment action.

82.   Upon information and belief, none of the other nine Directors that BravoSolution retained after November 2, 2016 had recently requested or taken FMLA-protected leave.

83.   When BravoSolution terminated Ms. Duffy's employment, she stopped earning any compensation whatsoever from BravoSolution.

84.   The allegations in this Count II amount to an FMLA retaliation.

12

## COUNT III – DISABILITY DISCRIMINATION BY ASSOCIATION (ADA)

85.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

86.    Ms. Duffy's mother's dementia is a "disability" as defined under the ADA.

87.    BravoSolution knew that Ms. Duffy had to care for her mother who has dementia.

88.    Additionally, BravoSolution unreasonably feared that, because Ms. Duffy had to care for her mother who has dementia, Ms. Duffy would not be able to continue to perform her job duties and responsibilities as required of her.

89.    Consequently, BravoSolution shifted job responsibilities and sales opportunities to others and, ultimately, terminated Ms. Duffy's employment.

90.    Upon information and belief, none of the other nine Directors that BravoSolution retained after November 2, 2016 had recently taken time off to care for a parent with a disability.

91.    The allegations in this Count III amount to a violation of the ADA.

## COUNT IV – DISABILITY DISCRIMINATION (ADA)

92.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

93.    Ms. Duffy's stress and depression are each a "disability" as defined under the ADA.

94.    Ms. Duffy's stress and depression are mental impairments that substantially limit one or more major life activities; most notably, her ability to work.

95.    Alternatively, BravoSolution perceived that Ms. Duffy's stress and depression would substantially limit her ability to work.

13

96.     Consequently, BravoSolution shifted job responsibilities and sales opportunities to others and, ultimately, terminated Ms. Duffy's employment.

97.     Ms. Duffy was a "qualified individual" as defined under the ADA, as evidenced by her consistently strong performance reviews, including the one she received in 2016.

98.     As of November 2, 2016, Ms. Duffy and the other nine Directors were all similarly situated.

99.     Upon information and belief, none of the other nine Directors that BravoSolution retained after November 2, 2016 had a disability.

100.    Upon information and belief, BravoSolution did not regard any of the other nine Directors that it retained after November 2, 2016 as having a disability.

101.    BravoSolution shifted job responsibilities and sales opportunities to others and, ultimately, terminated Ms. Duffy's employment because either she had a disability or BravoSolution regarded her as having a disability.

102.    The allegations in this Count IV amount to a violation of the ADA.

## COUNT V – GENDER/SEX DISCRIMINATION – DISPARATE TREATMENT (TITLE VII)

103.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

104.    As a woman, Ms. Duffy is a member of a protected class under Title VII.

105.    Ms. Duffy was qualified for the position, as evidenced by her consistently strong performance reviews, including the one she received in 2016.

106.    As of November 2, 2016, only two of the ten Directors were female.

14

107.    All of the male Directors were treated more favorably because BravoSolution retained all of them over Ms. Duffy.

108.    BravoSolution's reason for terminating Ms. Duffy's employment is pretextual because, upon information and belief, she was more qualified than one or more of the male employees.

109.    BravoSolution violated Title VII.

## RELIEF

WHEREFORE, Plaintiff, Heather Duffy, seeks legal and equitable relief in connection with the unlawful conduct of Defendant BravoSolution US, Inc., and specifically prays that the Court grant the following relief:

1.    BravoSolution is to compensate Ms. Duffy, reimburse Ms. Duffy, and make Ms. Duffy whole for any and all pay and benefits Ms. Duffy would have received had it not been for BravoSolution's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

2.    Ms. Duffy is to be awarded liquidated and punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish BravoSolution for its willful, deliberate, malicious and outrageous conduct and to deter BravoSolution or other employers from engaging in such misconduct in the future;

3.    Ms. Duffy is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

15

4. Ms. Duffy is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law;

5. Ms. Duffy's claims are to receive a trial by jury to the extent allowed by applicable law. Ms. Duffy has also endorsed this demand on the caption of this Complaint in accordance with the Federal Rule of Civil Procedure.

Dated: October 5, 2017

Eric B. Meyer, Esquire
PA Attorney Id. No.: 87969
Claire A. Blewitt, Esquire
PA Attorney Id. No.: 320816
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel: (215) 575-7283
Email: emeyer@dilworthlaw.com

*Attorneys for Plaintiff Heather Duffy*

16

# EXHIBIT A

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  Heather Duffy<br>9018 Tradd Street<br>Boca Raton, FL 33434 | From:  Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2017-00902** | **Legal Unit** | **(215) 440-2828** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒    More than 180 days have passed since the filing of this charge.

☐    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒    The EEOC is terminating its processing of this charge.

☐    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Spencer H. Lewis, Jr.,**
**District Director**

7/18/17

*(Date Mailed)*

cc:    Christopher G. Kuhn
      Vice President and General Counsel
      BravoSolution US, Inc.
      101 Lindenwood Drive
      Suite 420
      Malvern, PA 19355

      Eric B. Meyer, Esq.
      DILWORTH PAXSON LLP
      1500 Market St.
      Suite 3500 E
      Philadelphia, PA 19102

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10 – not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.**  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ **"Regarded as"** coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.