IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HEATHER DUFFY,** | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : NO. 2:17- |
| **BRAVOSOLUTION US, INC.,** | : <u>**JURY TRIAL DEMANDED**</u> |
| Defendant. | : |

### **FIRST AMENDED COMPLAINT**

After several years working for Defendant BravoSolution US, Inc. – five great years replete with strong performance reviews and generous compensation – things went bad all of a sudden for Plaintiff Heather Duffy in 2016.

Ms. Duffy's 2016 misfortune began with a painful divorce, which took its toll on Ms. Duffy emotionally. Although BravoSolution knew about Ms. Duffy's related stress and depression and how it adversely affected her, the company stood by with idle hands. It never offered her leave, an accommodation – nothing.

Perhaps, BravoSolution did not understand its legal obligations. Indeed, when a similar issue arose in July 2016, BravoSolution faltered again. That is when Ms. Duffy told Human Resources at BravoSolution that she would need to relocate to Florida to care for a parent with dementia, and would need two weeks to care for her parent. But, again, the company failed to offer Ms. Duffy job-protected leave. Instead, Ms. Duffy worked during a portion of her relocation after which the company allowed Ms. Duffy to use her vacation time to care for her parent. To boot, BravoSolution required Ms. Duffy to work <u>while she was "on vacation" caring for her sick mom</u>.

As BravoSolution continued to bungle Ms. Duffy's leave-related issues, other dominoes began to fall. Most notably, BravoSolution blurred the lines between personal and professional when it unreasonably feared that Ms. Duffy's caregiver responsibilities and overall toll on her emotional health would impede her from satisfying job requirements. Consequently, BravoSolution unfairly transitioned job responsibilities and sales opportunities away from Ms. Duffy. These irrational concerns harmed Ms. Duffy by decreasing her earning capacity.

The final blow came in November 2016, when BravoSolution terminated Ms. Duffy's employment about two weeks after Ms. Duffy returned to work from caring for her mom. In the termination letter, BravoSolution did not explain its actions to Ms. Duffy. Instead, BravoSolution communicated to Ms. Duffy that she had been laid off as part of a purported company "reorganization." At that time, Ms. Duffy was one of ten Directors, eight of whom were male, none of whom either had a disability or had recently taken time off to care for a parent with a disability or serious health condition. For sure, Ms. Duffy had outperformed some of the other Directors. But, she was the only one that BravoSolution laid off.

Based on the foregoing, Ms. Duffy, through her counsel, Dilworth Paxson LLP, now initiates this action against BravoSolution for violations of the Americans with Disabilities Act 42 U.S.C. §§ 12101, *et seq.* (the "ADA"), the Family and Medical Leave Act 29 U.S.C. §§ 22601, *et seq.* (the "FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act 43 P.S. §§ 951, *et seq.* (the "PHRA"), and avers as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over Plaintiff's ADA, FMLA, and Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

2. Additionally, this Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are citizens of different states.

3. This Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367(a) because such claims form part of the same case or controversy.

4. This Court may properly maintain personal jurisdiction over BravoSolution because it is incorporated in the Commonwealth of Pennsylvania, headquartered in Pennsylvania, and because its contacts with the Commonwealth of Pennsylvania and this judicial district are sufficient for the exercise of jurisdiction over BravoSolution to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

5. Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because BravoSolution is incorporated in the Commonwealth of Pennsylvania, headquartered in Pennsylvania, and because substantially all of the acts giving rise to the claims set forth herein occurred in this judicial district, and BravoSolution is deemed to reside where it is subject to personal jurisdiction, rendering BravoSolution a resident of the Eastern District of Pennsylvania.

6. Ms. Duffy is proceeding herein under Title VII and the ADA and has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

7. Ms. Duffy is proceeding herein under the PHRA and has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and by filing the instant lawsuit within two years after receiving a notice of dismissal and/or right to sue letter from the PHRC.

## PARTIES

8. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9. Ms. Duffy is an adult female residing at 9018 Tradd Street, Boca Raton, FL 33434.

10. BravoSolution is headquartered at 101 Lindenwood Drive, Malvern, PA 19355 and develops strategic procurement platforms for companies and purchasing professionals worldwide.

11. At all times relevant herein, BravoSolution acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for BravoSolution.

12. BravoSolution is an "employer" within the meaning of the FMLA, ADA, and Title VII because BravoSolution employed at least 50 employees for at least 20 calendar weeks during 2015 and/or 2016.

## **FACTUAL BACKGROUND**

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Ms. Duffy worked for BravoSolution from July 2011 until November 2016.

15. Although BravoSolution and Ms. Duffy agreed that Ms. Duffy could work remotely, she was based out of BravoSolution's Malvern headquarters.

16. In 2016, Ms. Duffy served as a Director of BravoSolution.

17. During 2016, Ms. Duffy was one of ten Directors at BravoSolution.

18. All ten BravoSolution Directors:

    a. shared the same supervisor;

    b. shared similar tasks and job responsibilities; and

    c. were subject to the same standards.

19. Eight of the ten Directors were male.

20. BravoSolution compensates Directors with a combination of salary and sales commission.

### **Ms. Duffy openly suffers from stress and depression at work and further notifies BravoSolution that she must care for a parent with dementia.**

21. In July 2016, Ms. Duffy informed BravoSolution's Human Resources Department that she would need to relocate to Florida to care for a parent with dementia, and would need two weeks to care for her parent in October 2016.

22. Because of her dementia, Ms. Duffy's mother has trouble thinking, learning, remembering, and socializing, among other things.

23. Ms. Duffy's mother's dementia requires her to have continuing treatment with a health care provider.

24. In 2016, Ms. Duffy was also going through a painful divorce.

25. Between the divorce and her mother's declining health, Ms. Duffy exhibited signs of stress and depression.

26. Specifically, Ms. Duffy was sad, irritable, and fatigued for more than six months.

27. Among other things, Ms. Duffy also had trouble concentrating at work.

28. Upon information and belief, BravoSolution knew about Ms. Duffy's painful divorce.

29. Upon information and belief, BravoSolution observed Ms. Duffy exhibiting the foregoing signs of stress and depression.

30. For example, Ms. Duffy communicated to her indirect supervisor, Dan Warn, that she was going through a painful divorce and was suffering emotionally.

31. Multiple times, Ms. Duffy cried on the phone to Mr. Warn while discussing both her divorce and her mother's illness.

32. During this time period, Ms. Duffy regularly treated with a physician for her stress and depression and was prescribed medication for these conditions.

33. As of October 2016, Ms. Duffy had never taken FMLA leave.

34. As of each day of 2016, Ms. Duffy had worked at least 1,250 hours in the preceding 12 months.

35. Throughout 2016, 50 or more employees, including Ms. Duffy, worked within 75 miles of BravoSolution's Malvern headquarters.

36. BravoSolution never offered provided Ms. Duffy FMLA leave to care for either her mother or herself.

37. BravoSolution never provided Ms. Duffy with any FMLA paperwork (e.g., Form WH-381 Notice of Eligibility and Rights & Responsibilities) in connection with her request for leave to care for her mother, or any leave to which she may have been entitled for her own stress and depression.

### When caring for her mother, Ms. Duffy uses vacation days. BravoSolution also asks Ms. Duffy to work.

38. From on or around October 3, 2016 to October 14, 2016 (returning to work on October 17, 2016), Ms. Duffy took time off from work to care for her mother (the "FMLA Leave").

39. During the FMLA Leave:

   a. Multiple supervisors, including Ms. Duffy's direct supervisor, knew that she was taking time off from work to care for her mother.

   b. BravoSolution treated Ms. Duffy's time off from work to care for her mother as a vacation, rather than FMLA-protected leave from work.

   c. Knowing that Ms. Duffy was taking time off from work to care for her sick mother, Ms. Duffy's indirect supervisor, Mr. Warn, required her to work.

40. BravoSolution never informed Ms. Duffy that she had the right to uninterrupted block leave from work to care for her mother (*i.e.*, Ms. Duffy did not have to work and care for her mother concurrently).

41. BravoSolution never informed Ms. Duffy that she could extend her leave from work to care for her mother.

## BravoSolution deprives Ms. Duffy of sales opportunities and then terminates her employment.

42. Ms. Duffy never had disciplinary issues at BravoSolution.

43. Ms. Duffy consistently received strong performance reviews from BravoSolution.

44. In August 2016, Ms. Duffy received an annual performance review from BravoSolution with an overall score of "Exceeds Contribution."

45. However, around this time, BravoSolution began to shift responsibilities and sales opportunities away from her to others.

46. Upon information and belief, Ms. Duffy earned less in sales commissions because BravoSolution shifted Ms. Duffy's job responsibilities and sales opportunities to others.

47. On or about November 2, 2016, BravoSolution terminated Ms. Duffy's employment.

48. BravoSolution confirmed the termination of employment in a letter to Ms. Duffy.

49. BravoSolution's termination letter did not state a reason for Ms. Duffy's termination.

50. Instead, BravoSolution separately communicated to Ms. Duffy that she was laid off due to a company reorganization.

51. Ms. Duffy was the only one of ten Directors that was laid off as part of BravoSolution's alleged company reorganization.

52. Upon information and belief, Ms. Duffy's work performance was better than some of the remaining nine Directors.

## COUNT I - FMLA INTERFERENCE

53. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54. BravoSolution is a covered employer under the FMLA.

55. Ms. Duffy was eligible to take leave under the FMLA.

56. Under the FMLA, an employee is entitled to leave to care for a parent with a serious health condition.

57. Ms. Duffy's mother's dementia is an illness, injury, impairment, or physical or mental condition.

58. Additionally, Ms. Duffy's mother's dementia satisfies one or more of the following criteria:

   a. It involves periods of incapacity period or treatment connected with inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility.

   b. It involves a period of incapacity requiring absence of more than three calendar days from work, school, or other regular daily activities that also involves continuing treatment by (or under the supervision of) a health care provider.

   c. It involves a period of incapacity that is permanent or long-term, as treatment is often ineffective.

   d. It is a condition for which an individual generally receives multiple treatments by, or on referral by, a health care provider that likely would result in incapacity of more than three consecutive days if left untreated.

59. Ms. Duffy's mother had (and continues to have) a serious health condition.

60. Additionally, an employee may take FMLA leave when that employee is unable to work because of her own serious health condition.

120220843_1

61. Ms. Duffy's stress and depression related to her painful divorce qualifies as an illness, injury, impairment, or physical or mental condition.

62. Additionally, because Ms. Duffy regularly treated with a physician for her stress and depression and was prescribed medication for these conditions, these conditions satisfy one or more of the foregoing criteria identified in paragraph 56 above.

63. Ms. Duffy's stress and depression were serious health conditions.

64. Ms. Duffy provided BravoSolution with enough information to establish that Ms. Duffy would require the use of FMLA leave to care for her mother because her mother had a serious health condition.

65. Additionally, BravoSolution knew or should have known that Ms. Duffy may need FMLA leave to treat for her own serious health condition.

66. However, BravoSolution never offered FMLA leave to Ms. Duffy or otherwise apprised her of her rights under the FMLA.

67. Had BravoSolution advised Ms. Duffy of her right to take up to 12 weeks of FMLA leave after BravoSolution knew that Ms. Duffy needed FMLA leave to care for her mother, Ms. Duffy could have learned about her right to take additional job-protected FMLA leave to care for her mother.

68. Because BravoSolution did not advise Ms. Duffy of her right to take up to 12 weeks of FMLA leave after BravoSolution knew that Ms. Duffy needed FMLA leave to care for her mother, Ms. Duffy was unable to take additional job-protected FMLA leave to care for her mother.

69. It is reasonable likely that Ms. Duffy would have taken additional leave under the FMLA to care for her mother had Ms. Duffy known about her right to take up to 12 weeks of FMLA leave to care for her mother.

70. Had BravoSolution advised Ms. Duffy of her right to take up to 12 weeks of FMLA leave after BravoSolution knew that Ms. Duffy needed FMLA leave for her own serious health condition, Ms. Duffy could have taken job-protected FMLA leave from work to treat for her own serious health condition.

71. Because BravoSolution did not advise Ms. Duffy of her right to take up to 12 weeks of FMLA leave after BravoSolution knew that Ms. Duffy needed FMLA leave for her own serious health condition, Ms. Duffy was unable to take job-protected FMLA leave from work to treat for her own serious health condition.

72. It is reasonable likely that Ms. Duffy would have taken job-protected FMLA leave from work to treat for her own serious health condition had she known about her right to do so.

73. By failing to provide Ms. Duffy with notice of her rights under the FMLA, BravoSolution interfered with Ms. Duffy's ability to meaningfully exercise her right to FMLA leave and she suffered resulting prejudice.[1]

74. Additionally, by requiring Ms. Duffy to work while on the FMLA Leave, BravoSolution interfered with Ms. Duffy's substantive rights under the FMLA, while discouraging her from using such leave.

---

[1] See, *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004) *holding modified by Erdman v. Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009).

120220843_1

## COUNT II - FMLA RETALIATION

75. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

76. The leave from work that Ms. Duffy sought to care for her mother is protected under the FMLA.

77. BravoSolution otherwise knew or should have known that Ms. Duffy may need FMLA leave for her own serious health condition.

78. When BravoSolution shifted Ms. Duffy's job responsibilities and sales opportunities to others, it knew or should have known that Ms. Duffy had requested FMLA-protected leave to care for her mother and may need FMLA leave for her own serious health condition.

79. BravoSolution shifted Ms. Duffy's job responsibilities and sales opportunities to others because Ms. Duffy: (a) had requested FMLA-protected leave to care for her mother; (b) may need FMLA leave for her own serious health condition; or (c) both.

80. Upon information and belief BravoSolution did not shift any job responsibilities or sales opportunities from any of the other Directors.

81. When BravoSolution terminated Ms. Duffy's employment, it knew that she had needed, requested, and taken FMLA-protected leave.

82. BravoSolution terminated Ms. Duffy's employment because: (a) she needed/requested FMLA-protected leave; (b) she took FMLA-protected leave; or (c) both.

83. Indeed, BravoSolution's termination of Ms. Duffy's employment was so close in time to Ms. Duffy's use of FMLA-protected leave, that it demonstrates a causal connection between her use of leave and the adverse employment action.

84. Upon information and belief, none of the other nine Directors that BravoSolution retained after November 2, 2016 had recently requested or taken FMLA-protected leave.

85. When BravoSolution terminated Ms. Duffy's employment, she stopped earning any compensation whatsoever from BravoSolution.

86. The allegations in this Count II amount to an FMLA retaliation.

### COUNT III – DISABILITY DISCRIMINATION BY ASSOCIATION (ADA)

87. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

88. Ms. Duffy's mother's dementia is a "disability" as defined under the ADA.

89. BravoSolution knew that Ms. Duffy had to care for her mother who has dementia.

90. Additionally, BravoSolution unreasonably feared that, because Ms. Duffy had to care for her mother who has dementia, Ms. Duffy would not be able to continue to perform her job duties and responsibilities as required of her.

91. Consequently, BravoSolution shifted job responsibilities and sales opportunities to others and, ultimately, terminated Ms. Duffy's employment.

92. Upon information and belief, none of the other nine Directors that BravoSolution retained after November 2, 2016 had recently taken time off to care for a parent with a disability.

93. The allegations in this Count III amount to a violation of the ADA.

### COUNT IV – DISABILITY DISCRIMINATION (ADA)

94. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

95. Ms. Duffy's stress and depression are each a "disability" as defined under the ADA.

96. Ms. Duffy's stress and depression are mental impairments that substantially limit one or more major life activities; most notably, her ability to work.

97. Alternatively, BravoSolution perceived that Ms. Duffy's stress and depression would substantially limit her ability to work.

98. Consequently, BravoSolution shifted job responsibilities and sales opportunities to others and, ultimately, terminated Ms. Duffy's employment.

99. Ms. Duffy was a "qualified individual" as defined under the ADA, as evidenced by her consistently strong performance reviews, including the one she received in 2016.

100. As of November 2, 2016, Ms. Duffy and the other nine Directors were all similarly situated.

101. Upon information and belief, none of the other nine Directors that BravoSolution retained after November 2, 2016 had a disability.

102. Upon information and belief, BravoSolution did not regard any of the other nine Directors that it retained after November 2, 2016 as having a disability.

103. BravoSolution shifted job responsibilities and sales opportunities to others and, ultimately, terminated Ms. Duffy's employment because either she had a disability or BravoSolution regarded her as having a disability.

104. The allegations in this Count IV amount to a violation of the ADA.

## COUNT V – GENDER/SEX DISCRIMINATION – DISPARATE TREATMENT (TITLE VII)

105. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

106. As a woman, Ms. Duffy is a member of a protected class under Title VII.

107. Ms. Duffy was qualified for the position, as evidenced by her consistently strong performance reviews, including the one she received in 2016.

108. As of November 2, 2016, only two of the ten Directors were female.

109. All of the male Directors were treated more favorably because BravoSolution retained all of them over Ms. Duffy.

110. BravoSolution's reason for terminating Ms. Duffy's employment is pretextual because, upon information and belief, she was more qualified than one or more of the male employees.

111. BravoSolution violated Title VII.

## COUNT VI – DISABILITY DISCRIMINATION (PHRA)

112. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

113. Ms. Duffy's stress and depression are each a "disability" as defined under the PHRA.

114. Ms. Duffy's stress and depression are mental impairments that substantially limit one or more major life activities; most notably, her ability to work.

115. Alternatively, BravoSolution perceived that Ms. Duffy's stress and depression would substantially limit her ability to work.

116. Consequently, BravoSolution shifted job responsibilities and sales opportunities to others and, ultimately, terminated Ms. Duffy's employment.

117. Ms. Duffy was a "qualified individual," as evidenced by her consistently strong performance reviews, including the one she received in 2016.

118. As of November 2, 2016, Ms. Duffy and the other nine Directors were all similarly situated.

119. Upon information and belief, none of the other nine Directors that BravoSolution retained after November 2, 2016 had a disability.

120. Upon information and belief, BravoSolution did not regard any of the other nine Directors that it retained after November 2, 2016 as having a disability.

121. BravoSolution shifted job responsibilities and sales opportunities to others and, ultimately, terminated Ms. Duffy's employment because either she had a disability or BravoSolution regarded her as having a disability.

122. The allegations in this Count VI amount to a violation of the PHRA.

## COUNT VII – GENDER/SEX DISCRIMINATION – DISPARATE TREATMENT (PHRA)

123. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

124. As a woman, Ms. Duffy is a member of a protected class under the PHRA.

125. Ms. Duffy was qualified for the position, as evidenced by her consistently strong performance reviews, including the one she received in 2016.

126. As of November 2, 2016, only two of the ten Directors were female.

127. All of the male Directors were treated more favorably because BravoSolution retained all of them over Ms. Duffy.

128. BravoSolution's reason for terminating Ms. Duffy's employment is pretextual because, upon information and belief, she was more qualified than one or more of the male employees.

129. The allegations in this Count VII amount to a violation of the PHRA.

## **RELIEF**

WHEREFORE, Plaintiff, Heather Duffy, seeks legal and equitable relief in connection with the unlawful conduct of Defendant BravoSolution US, Inc., and specifically prays that the Court grant the following relief:

1. BravoSolution is to compensate Ms. Duffy, reimburse Ms. Duffy, and make Ms. Duffy whole for any and all pay and benefits Ms. Duffy would have received had it not been for BravoSolution's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

2. Ms. Duffy is to be awarded liquidated and punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish BravoSolution for its willful, deliberate, malicious and outrageous conduct and to deter BravoSolution or other employers from engaging in such misconduct in the future;

3. Ms. Duffy is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

120220843_1

4. Ms. Duffy is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law;

5. Ms. Duffy's claims are to receive a trial by jury to the extent allowed by applicable law. Ms. Duffy has also endorsed this demand on the caption of this Complaint in accordance with the Federal Rule of Civil Procedure.

Dated: July 21, 2018

Katharine V. Hartman, Esquire
PA Attorney Id. No.: 203697
Claire A. Blewitt, Esquire
PA Attorney Id. No.: 320816
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel: (215) 575-7133
Email: khartman@dilworthlaw.com

*Attorneys for Plaintiff Heather Duffy*

120220843 1